**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

FREDERICK E.,[1]

               Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

               Defendant.

Case No. 1:22-cv-00089-SLG

## DECISION AND ORDER

On or about October 7, 2019, Frederick E. ("Plaintiff") protectively filed an

application for disability insurance benefits ("DIB") and supplemental security

income ("SSI")[2] under Titles II and XVI, respectively, of the Social Security Act ("the

---

[1] Plaintiff's name is partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Plaintiff's SSI application is dated October 7, 2019. A.R. 215. A notation by the SSA indicates Plaintiff filed his DIB application on December 10, 2019. A.R. 222. Pursuant to 20 C.F.R. §§ 416.340-350, a protective filing date establishes the earliest possible application date based on a claimant's oral inquiry about eligibility or a verbal or written statement of intent to file for benefits. Therefore, October 7, 2019, is considered Plaintiff's application filing date for both SSI and DIB.

Act")[3] with an alleged onset date of October 5, 2017.[4]  Plaintiff has exhausted his administrative remedies and filed a Complaint seeking relief from this Court.[5] Plaintiff's Opening Brief asks the Court to reverse and remand the agency's decision for an immediate award of benefits, or in the alternative, for further administrative proceedings.[6]  The Commissioner filed an Answer and Response Brief.[7]  Plaintiff filed a Reply Brief.[8]

Oral argument was not requested and was not necessary to the Court's decision.  This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[9]

---

[3] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time.  Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income.  Plaintiff brought claims under Titles II and XVI.  Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs.  *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI).  For convenience, the Court cites the regulations governing disability determinations under both titles.

[4] Administrative Record ("A.R.") A.R. 215–222.  The application summaries, not the applications themselves, appear in the Court's record.  In the initial SSI application, Plaintiff alleged disability beginning on November 21, 2013.  A.R. 215.  His alleged onset date was adjusted later to reflect substantial gainful activity until October 5, 2017.  A.R. 18, 226.

[5] Docket 1 (Plaintiff's Compl.).

[6] Docket 15 (Plaintiff's Br.).

[7] Docket 12 (Answer); Docket 19 (Commissioner's Br.).

[8] Docket 20 (Reply).

[9] 42 U.S.C. § 405(g).

Case No. 1:22-cv-00089-SLG, *Frederick E. v. Kijakazi*
Decision and Order
Page 2 of 28

# I. STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[10] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[11] Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[12] In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge ("ALJ")'s conclusion.[13] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[14] A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which he did not rely."[15] An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is

---

[10] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[11] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

[12] *Id.*; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[13] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[14] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[15] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[16]  Finally, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[17]  In particular, the Ninth Circuit has found that the ALJ's duty to develop the record increases when the claimant is unrepresented or is mentally ill and thus unable to protect his own interests.[18]  However, this duty exists "even when the claimant is represented by counsel."[19]

## II.  DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance benefits ("DIB") to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[20]  In addition, Supplemental Security Income ("SSI") may be available to individuals who do not

---

[16] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotations and citations omitted).

[17] *Smolen v. Chater,* 80 F.3d 1273,1288 (9th Cir. 1996) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)); *superseded in part by statute on other grounds,* 20 C.F.R. § 416.929(c)(3). *See also Garcia v. Comm'r of Soc. Sec.,* 768 F.3d 925, 930 (9th Cir. 2014).

[18] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).

[19] *DeLorme v. Sullivan,* 924 F.2d 841, 849 (9th Cir. 1991) (quoting *Brown,* 713 F.2d at 443).

[20] 42 U.S.C. § 423(a).

have insured status under the Act but who are age 65 or older, blind, or disabled.[21]

Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[22]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[23]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[24] A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[25] If a

---

[21] 42 U.S.C. § 1381a.

[22] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[23] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[24] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[25] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[26]  The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[27]  The steps, and the ALJ's findings in this case, are as follows:

**Step 1.**  Determine whether the claimant is involved in "substantial gainful activity" ("SGA").[28]  *The ALJ determined that Plaintiff had not engaged in SGA since October 5, 2017, the alleged onset date.*[29]

**Step 2.**  Determine whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience.  The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[30]  *The ALJ determined that Plaintiff had the following severe impairments: obesity; degenerative disc disease; scoliosis; status post right side C7 fracture; diabetes mellitus; right congenital clubfoot, status post-surgery; right*

---

[26] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098 (emphasis in original).

[27] *Tackett*, 180 F.3d at 1101.

[28] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[29] A.R. 18.

[30] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

*elbow bone spur; and migraines. The ALJ found that Plaintiff had the following*

*non-severe impairments: hypertension and gastroesophageal reflux disease. The*

*ALJ determined Plaintiff's asserted cerebral palsy and learning disability were not*

*medically determinable impairments.[31]*

**Step 3.** Determine whether the impairment or combination of impairments

meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R.

pt. 404, subpt. P, app.1, precluding substantial gainful activity. If the impairment(s)

is(are) the equivalent of any of the listed impairments, and meet(s) the duration

requirement, the claimant is conclusively presumed to be disabled. If not, the

evaluation goes on to the fourth step.[32] *The ALJ determined that Plaintiff did not*

*have an impairment or combination of impairments that met or medically equaled*

*the severity of one of the listed impairments in 20 CFR Part 404, Subpart P,*

*Appendix 1.[33]*

Residual Functional Capacity. Before proceeding to step four, a claimant's

residual functional capacity ("RFC") is assessed.[34] Once determined, the RFC is

used at both step four and step five. An RFC assessment is a determination of

what a claimant is able to do on a sustained basis despite the limitations from his

---

[31] A.R. 18–19.

[32] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[33] A.R. 19.

[34] 20 C.F.R. § 416.945.

impairments, including impairments that are not severe.[35]  *The ALJ determined that Plaintiff had the residual functional capacity to perform light work with the following limitations: he is limited to no more than occasional pushing or pulling with the bilateral lower extremities; occasional climbing of ramps or stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, or crawling; occasional exposure to humidity, wetness, extreme heat or cold, dusts, odors, fumes, or pulmonary irritants; no exposure to vibrations; no exposure to unprotected heights or moving mechanical parts; occasional operational foot controls with the right lower extremity; moderate background noise, like a business office, department store, grocery store, or light traffic; and frequent reaching from waist to chest with the right upper extremity.[36]*

**Step 4.**  Determine whether the claimant is capable of performing past relevant work.  At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC.  If the claimant can still do his past relevant work, the claimant is deemed not to be disabled.[37]  Otherwise, the evaluation process moves to the fifth

---

[35] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[36] A.R. 21.

[37] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

and final step.[38]  *The ALJ determined that Plaintiff was unable to perform any past relevant work.*[39]

**Step 5.**  Determine whether the claimant is able to perform other work in the national economy in view of his age, education, and work experience, and in light of the RFC.  If so, the claimant is not disabled.  If not, the claimant is considered disabled.[40]  *The ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including price marker (DOT #209.587-034, light, SVP 2, 130,000 jobs nationally), collator operator (DOT #208.685-010, light, SVP 2, 44,000 jobs nationally); and mail sorter (DOT #222.687-022, light, SVP 2, 105,000 jobs nationally).*[41]

The ALJ concluded that Plaintiff was not disabled at any time from October 5, 2017, the alleged onset date, through August 31, 2021, the date of the decision.[42]

---

[38] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[39] A.R. 25.

[40] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[41] A.R. 27.

[42] A.R. 27.

### III.     PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was 48 years old on October 5, 2017, the alleged disability onset date.[43]  At that time, he was considered a "younger person" (age 18–49).  He subsequently changed age categories in November 2018 to "closely approaching advanced age" (age 50–54).[44]  Plaintiff met the insured status requirements for DIB benefits through December 31, 2022.[45]  Plaintiff applied for disability benefits on October 7, 2019.[46]  His claim was denied initially on April 30, 2020,[47] and again on reconsideration on February 11, 2021.[48]  The ALJ issued an unfavorable hearing decision dated August 13, 2021.[49]  After the Appeals Council denied review on August 8, 2022, Plaintiff timely appealed to this Court.[50]

---

[43] A.R. 26, 215.

[44] *See* 20 C.F.R. §§ 404.1563, 416.963.

[45] A.R. 18.  In order to qualify for disability benefits under Title II, a claimant must have "insured status" and show his disability began on or before his date last insured. 42 U.S.C. §§ 423(a)(1), (c)(2), (d)(1)(A).

[46] A.R. 215–222.  Plaintiff's previous claim was denied on July 25, 2018 and his request for a hearing was dismissed as untimely on March 25, 2018 by the ALJ.  A.R. 58–62.  The Appeals Council denied Plaintiff's request for review of the dismissal on September 10, 2019.  A.R. 63–64.

[47] A.R. 61, 81.

[48] A.R. 96, 118.

[49] A.R. 15–27.

[50] A.R. 3–7, Docket 1.

# IV.    DISCUSSION

Plaintiff is represented by counsel in this appeal.  Plaintiff alleges the ALJ erred by failing to properly consider the opinion evidence provided by Plaintiff's treating provider, Eva Sensmeier, PA-C ("PA Sensmeier").  He asserts that "at most" PA Sensmeier's opinion supports an RFC for sedentary work, not light work. He notes that in this case, a sedentary classification would result in a finding of "disabled" when Plaintiff turned 50 years old given his lack of transferable work skills under the SSA's Medical-Vocational guidelines (the "Grids").[51]    The Commissioner maintains the decision should be affirmed because substantial evidence supports the ALJ's findings.[52]

For the reasons explained below, the Court affirms the Commissioner's decision.

## A. The SSA Regulations for Claims Filed After March 27, 2017.

Plaintiff applied for DIB and SSI benefits on or about October 7, 2019, so the regulations that became effective on March 27, 2017 apply to his claim.[53] Under these new regulations, the definition of what constitutes a medical opinion has been narrowed, focusing on what the claimant can do despite his impairments

---

[51] Docket 15 at 7–15.  *See* 20 C.F.R., Part 404, Subpt. P, App'x 2, § 201.12.

[52] Docket 19 at 2.

[53] On January 18, 2017, the SSA published revisions to the rules regarding the evaluation of medical evidence.  The revisions became effective on March 27, 2017. *See* 82 C.F.R. § 5844, 5869 (1-18-2017).

Case No. 1:22-cv-00089-SLG, *Frederick E. v. Kijakazi*
Decision and Order
Page 11 of 28

and what work-related limitations are present.[54] The new regulations define a medical opinion as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:

> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

> (iv) Your ability to adapt to environmental conditions, such as temperature or fumes.[55]

The new regulations further provide that the ALJ no longer gives any particular weight to a medical opinion based on its source, thereby eliminating the treating source rule.[56] Instead, the ALJ considers the persuasiveness of a medical opinion based on five factors: (1) supportability; (2) consistency; (3) relationship

---

[54] *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1513(a)(2).

[55] 20 C.F.R. § 404.1513(a)(2).

[56] *Revisions to Rules Regarding the Evaluation of Medical Evidence,* 82 Fed. Reg. 5844-01 (Jan. 18, 2017), 2017 WL 168819, at *5867–68; 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (for claims filed on or after March 27, 2017).

with the claimant, including length, extent, and type of treatment; (4) specialization; and (5) other relevant factors that support or contradict the medical opinion.[57]

Supportability and consistency are considered the most important factors for evaluating persuasiveness.[58] Supportability and consistency are explained as follows in the regulations:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[59]

Generally, these are the only two factors the ALJ is required to address in his decision.[60] However, when two or more medical opinions or prior administrative medical findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain

---

[57] 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

[58] The regulations state, "The factors of supportability . . . and consistency . . . are the most important factors [the SSA] consider[s] when [the SSA] determine[s] how persuasive [the SSA] find[s] a medical source's medical opinions or prior administrative medical findings to be." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (for claims filed on or after March 27, 2017).

[59] 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

[60] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.").

Case No. 1:22-cv-00089-SLG, *Frederick E. v. Kijakazi*
Decision and Order
Page 13 of 28
Case 1:22-cv-00089-SLG   Document 21   Filed 07/07/23   Page 13 of 28

how "the other most persuasive factors" were considered.[61]  In the Ninth Circuit, the new regulatory framework no longer requires ALJs to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining medical source's opinion.[62]

## B. PA Sensmeier's Medical Opinions.

Plaintiff challenges the ALJ's consideration of the opinion of Plaintiff's treating provider, Eva Sensmeier, PA-C.  PA Sensmeier provided treatment to Plaintiff from approximately October 5, 2017 through September 19, 2019.[63]  PA Sensmeier provided two opinions regarding Plaintiff's physical impairments.

On June 5, 2019, PA Sensmeier wrote a "To Whom It May Concern" letter. In the letter, she stated that Plaintiff had "severe scoliosis and severe mal rotation of his feet."  She noted that these impairments made walking difficult for Plaintiff and that Plaintiff "suffer[ed] from a great deal of pain, when he tries to walk and carry anything."  She opined that Plaintiff could not work as a result of his severe scoliosis and severe mal rotation of his feet.[64]

On September 19, 2019, PA Sensmeier completed a work restrictions questionnaire provided by Plaintiff's attorney.  She opined that Plaintiff was unable

---

[61] 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (for claims filed on or after March 27, 2017).

[62] *Woods v. Kijakazi,* 32 F.4th 785 (9th Cir. 2022).

[63] A.R. 443.

[64] A.R. 436.

to work full or part-time because he was "unable to bear his own weight while walking."  She listed cerebral palsy and congenital scoliosis with malrotation as the conditions significantly interfering with Plaintiff's ability to perform full time work on a sustained and competitive basis.  PA Sensmeier opined that in the course of an eight-hour day, Plaintiff could sit for a total of only 15 minutes, stand for a total of less than 5 minutes, and walk for a total of 10-15 minutes.  She added that Plaintiff was "unable to participate in any activity" during the workday apart from this limited time sitting, standing and walking.  She also opined that cervical radiculopathy decreased Plaintiff's motor strength and that Plaintiff could never operate foot controls with his left foot due to clubfoot, a left leg "remarkably shorter" than the right, and external rotation with supination of the left foot.  PA Sensmeier opined that Plaintiff could climb stairs, ramps, ladder, or scaffolds occasionally, kneel and crawl occasionally, and never balance, stoop, or crouch.  She identified that vibrations aggravated Plaintiff's severe scoliosis with malrotation and that "any physical activity that he has to [do] he can only [do] for 5-10 min[utes] then pain starts to exacerbate."[65]

### C. The ALJ Adequately Considered the Supportability and Consistency of PA Sensmeier's Opinions.

The ALJ found PA Sensmeier's opinions unpersuasive and unsupported by the evidence in the record.  Specifically, the ALJ discounted PA Sensmeier's

---

[65] A.R. 437–443.

opinion that Plaintiff was unable to do full-time or part-time work because he could not bear his own weight while walking. The ALJ also discounted PA Sensmeier's opinion that Plaintiff's scoliosis and severe malrotation rendered him unable to work because of the associated difficulties with walking and pain. The ALJ stated that PA Sensmeier's work opinion was "strikingly inconsistent with the relevant medical evidence of record . . . which includes examination findings of a consistently normal gait, as well as extensive activities of daily living, including shoveling snow from the roof, riding an ATV, performing yard work, boating, camping, and exercising."[66]

### 1. *Normal Examination Findings.*

An ALJ may discount a medical source's opinion when the record as a whole shows relatively normal exam findings.[67] Although Plaintiff points to specific records wherein the medical provider observed an antalgic gait or a limp,[68] the record as a whole does not support PA Sensmeier's opinion that Plaintiff could not work due to walking difficulties or that he was unable to bear his own weight while walking. At most medical appointments, Plaintiff displayed a normal gait, even

---

[66] A.R. 25.

[67] *See Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002).

[68] Docket 15 at 10. *See e.g.,* A.R. 358 (subtle limp with ambulation), 390 (walks with antalgic gait (chronic) secondary to right club foot at a medical appointment for new back pain symptoms), 393 (limping), 762 (gait is antalgic on physical examination for trauma caused by a 4-wheeler accident), 783 (ambulates with a limp).

when he was experiencing flares of chronic back and neck pain.[69]   And while

Plaintiff suffered a fall shoveling snow from a roof,[70] an accident involving alcohol

while riding an ATV without a helmet,[71] and a fall on a boat ramp while

intoxicated,[72] none of Plaintiff's medical providers attributed these accidents and

falls to an inability to bear weight while walking or walking difficulties due to

congenital scoliosis, malrotation, or cerebral palsy.   To the contrary, medical

providers frequently observed normal extremity strength and function.[73]

### 2. *Evaluation of Pain*

The ALJ discounted PA Sensmeier's opinion that Plaintiff was unable to work

due to the pain caused by scoliosis and severe malrotation.[74]   The ALJ did not

specifically address PA Sensmeier's pain opinion, but instead summarized the

---

[69] S*ee, e.g.,* A.R. 37 (ambulates normally into clinic unassisted), 349 (normal gait, able to heel and toe walk and squats without difficulty), 409 (gait is normal, able to raise and lower himself normally from the chair), 434 (normal gait, able to heel and toe stand), 710 (gait is normal, slow to rise from chair; experiencing a chronic pain flare caused by "significant yard work"), 716 (normal gait; moves freely without restriction), 719 (gait within normal limits; moves freely without restriction), 725 (gait is at his baseline, gets up and down from a chair slowly but independently after falling off roof into snow) 734 (normal gait), 738 (steady gait; full range of motion in all joints), 742 (normal gait), 765 (normal gait, gets up and down from seated position slowly and carefully but without assistance).

[70] A.R. 725.

[71] A.R. 532–40.

[72] A.R. 758.

[73] *E.g.,* A.R. 358 (normal upper and lower extremity strength), 377 (motor strength 5/5), 434 (lower extremity strength 5/5), 739 (normal motor function), 758 (equal strength in all four extremities), 783 (normal lower extremity strength), 762 (equal strength in the four extremities).

[74] A.R. 25.

Case No. 1:22-cv-00089-SLG, *Frederick E. v. Kijakazi*
Decision and Order
Page 17 of 28

records showing that Plaintiff continued to engage in activities that exacerbated his back and neck pain.[75]

Plaintiff alleges that the record is replete with his complaints of pain, "which obviously affect his abilities to stand/walk."[76] The Commissioner asserts that the ALJ accommodated Plaintiff's pain complaints by limiting lifting to no more than 20 pounds, frequently reaching from waist to chest with his right arm, and by limiting Plaintiff's postural activities and exposure to environmental conditions. The Commissioner also asserts that the ALJ reasonably concluded that clinical findings, adequate pain control with medications, and Plaintiff's activities contradicted Plaintiff's claims of more severe pain.[77]

In the Ninth Circuit, an ALJ may discount a claimant's pain complaints for failure to follow a prescribed treatment.[78] Here, the record shows Plaintiff clearly experienced chronic neck and back pain during the relevant disability period.[79]

---

[75] A.R. 23–24.

[76] Docket 15 at 10.

[77] Docket 19 at 12–13.

[78] *See, e.g., Chaudhry v. Astrue,* 688 F.3d 661, 672 (9th Cir. 2012) (affirming ALJ's rejection of symptom testimony in part because "Chaudhry repeatedly failed to seek treatment ... or follow prescribed courses of treatment"); *Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir. 2007) ("Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated.").

[79] *E.g.,* A.R. 342 (chronic back pain), 344 (history of back pain), 347 (low back pain for many years), 356 (chronic back pain and scoliosis), 358 (chronic back pain), 367 (lower back pain), 372 (back pain at level 10), 433, 450, 458 (chronic back pain), 475 (chronic back pain "since 1973"), 481, 493 (chronic back pain), 710 (chronic pain flare), 719, 722, 728 (chronic neck and

However, treatment notes indicate that Plaintiff continued to engage in activities that provoked pain, often against the advice of his medical providers. For example, in May 2020, Plaintiff suffered a facial laceration and a closed C7 fracture in an ATV accident. He was prescribed an Aspen collar and advised to avoid strenuous activity, exercise, and heavy-lifting (nothing heavier than a gallon of milk) until follow-up in three months.[80] Approximately one month after his ATV accident, Plaintiff received treatment for falling on a boat ramp while intoxicated, resulting in "perhaps slightly increased gapping" in his cervical fracture.[81] Also in June 2020, Plaintiff's provider noted that Plaintiff continued to engage in activities that provoked pain despite the apparent widening of his C7 fracture, including weed whacking in the yard.[82] In August and September 2020, Plaintiff reported that his pain increased after "vigorous tugging" while "repairing a car" and after "really having to yank on some rusty lug nuts" while working on a truck.[83] Again in June 2021, Plaintiff reported a chronic pain flare after doing significant yard work.[84]

---

back pain controlled), 731 (chronic neck, back and head pain), 734 (no change in chronic neck and back pain), 737 (chronic neck, back and head pain), 742 (bilateral thoracic back pain, history of cervical fracture), 745 (chronic neck pain flare), 749 (chronic pain flare after camping), 752 (chronic pain), 755 (chronic back pain, no neck pain), 780 (persistent back pain).

[80] A.R. 545.

[81] A.R. 758.

[82] A.R. 756.

[83] A.R. 742, 745.

[84] A.R. 710.

Moreover, if symptoms can be controlled effectively with medications and treatment, a claimant's condition is not disabling.[85] Although the record in this case shows episodic severe flare-ups of back and neck pain,[86] on the whole, treatment notes indicate that Plaintiff's chronic neck and back pain were consistently controlled with prescription pain medications and that providers recommended conservative treatments such as stretching, exercise, and physical therapy.[87]

3. *Inconsistent Daily Activities*

A claimant "does not need to be utterly incapacitated in order to be disabled."[88] However, an ALJ may also discount a provider's opinion if it is inconsistent with the claimant's level of activity, particularly if the claimant's

---

[85] *Warre v. Comm'r of Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006).

[86] *E.g.,* A.R. 372–74 (back pain at level 10 with severely limited range of motion due to pain and kyphosis), 393 (back pain, doesn't want to lay on exam table), 780 (chronic back pain increasingly interfering with ability to work or be active), 783 (Plaintiff filing for disability due to "severe Scoliosis and his chronic foot pain"), 786 (not able to exercise much because of pain limitations), 790 (back pain limiting work and ADLs).

[87] *E.g.,* A.R. 351 (recommended daily stretching and exercise; use of NSAIDs), 354 (requested Norco), 358 (uses Hydrocodone only when deep pain aggravated by housework and yard work he does every day to ready his house for sale), 365 (back pain unchanged – "no better, no worse – except when he does too much, then the pain worsens"), 378 ("has not used NSAIDS in years" and only takes hydrocodone when his pain is unmanageable), 407 ("opioids are the only medications that work"), 410 (chronic back pain managed "episodically"), 711 ("hydrocodone allows him to be more mobile"), 728 (flare-up due to snow shoveling; chronic neck and back pain normally controlled with pain medication), 734 (chronic low back pain controlled by pain medication), 737–38 (no significant change in neck and back pain and asked for Norco prescription to be refilled), 745–46 (requested pain medication refill for flare of neck pain after working on a vehicle), 765 (chronic back pain managed with pain medications), 771 (pain medication refill).

[88] *Revels v. Berryhill,* 874 F.3d 648, 667 (9th Cir. 2017) (internal quotation and citation omitted).

activities are easily transferable to the workplace environment.[89]  In this case, the ALJ found that Plaintiff participated in extensive activities of daily living, including shoveling snow from the roof, riding an ATV, performing yard work, boating, camping, and exercising.[90]  Plaintiff asserts that his participation in these activities was actually sporadic and by occasionally attempting to engage in these activities, he exacerbated the pain caused by his impairments.[91]

At Plaintiff's hearing, upon questioning by his attorney, Plaintiff testified that before his accident in May 2020, he hadn't ridden an ATV since he was a child and didn't ride again after his accident.[92]  He testified he had been "hopping on a boat to talk to somebody and fell between the boat and . . .just hurt my back" approximately one month after his May 2020 ATV accident.[93]  Plaintiff also testified that he lived alone and although he had help from others, he fell off of his roof while moving snow because he couldn't get help in a "small town in the wintertime."[94] He testified that in June 2021, one month before the hearing, he spent approximately 15 minutes pushing a lawnmower and did some raking and weed-

---

[89] *Rollins v. Massanari,* 261 F.3d 853, 856 (9th Cir. 2001).

[90] A.R. 25.

[91] Docket 15 at 11.

[92] A.R. 41.

[93] A.R. 42.

[94] A.R. 43.

pulling.[95]  He stated that he did not think he could perform any job, even one without much lifting, because he was "go[ing] through so much pain" and was on pain medications.  He indicated that he was trying to move into assisted living in Anchorage.[96]

The ALJ's description of Plaintiff's daily activities somewhat mischaracterizes the evidence in this case.  Specifically, the record does not indicate that Plaintiff regularly went camping, boating, or ATV riding.[97]  However, in February 2021, he reported to his primary care provider that he was trying to exercise at his home gym four to five times per week and also that he was riding an exercise bike for eight to ten minutes every other day.[98]  Overall, the medical record supports the ALJ's reasons for rejecting PA Sensmeier's medical opinions. For example, the medical record does show that Plaintiff experienced pain flare-ups after extensive yardwork, snow shoveling, and working on cars, despite his doctors' advice to avoid those activities.[99]  Further, as explained above, absent these activities, Plaintiff's symptoms were otherwise managed.

---

[95] A.R. 50.

[96] A.R. 44, 48.

[97] A.R. 41, 530 (ATV accident), 42, 633 (fell off boat dock), 749–50 (three-day car camping trip)..

[98] A.R. 735 (trying to exercise 4-5 times per week), 737 (recently put together a small home gym in his home and is planning workouts).

[99] *E.g.,* A.R. 358, 418, 710, 716, 728, 742, 745, 756.

Plaintiff is essentially asking this Court to re-weigh the evidence, which this Court may not do.[100] Because the ALJ reasonably considered the supportability and consistency of PA Sensmeier's opinions and the ALJ's decision was supported by substantial evidence, the Court will not disturb the ALJ's finding that PA Sensmeier's opinion was unpersuasive.

**D. The SSA Medical Vocational Guidelines.**

The SSA introduced the Medical-Vocational guidelines (the "Grids") in 1978 to better assist ALJs in determining whether work exists in the national economy that a claimant is able to perform.[101] Under the Grids, a claimant is either disabled or not disabled based on the claimant's combination of four factors: residual functional capacity, age, education, and work experience.[102]

Here, Plaintiff alleges that "at most," PA Sensmeier's opinion may support an RFC for sedentary work. Specifically, he alleges that PA Sensmeier's opinion would support standing and/or walking for about two hours in an eight-hour workday.[103] He then asserts that a sedentary RFC would result in a determination that Plaintiff was disabled as of his 50th birthday in November 2018, pursuant to

---

[100] *Ahearn v. Saul,* 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ.").

[101] *Heckler v. Campbell,* 461 U.S. 458, 461 (1983).

[102] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2.

[103] Docket 15 at 8.

the Grids.[104]  The Commissioner counters that the ALJ acknowledged Plaintiff's limitations by restricting him to "a range of light work that included restrictions on using his feet and postural limitations."[105]

Because the ALJ's determination that PA Sensmeier's opinion was unpersuasive is supported by substantial evidence, the Court does not speculate whether PA Sensmeier's opinion would have supported a sedentary RFC after Plaintiff turned 50 years old.

**E. State Agency Opinions.**

At the initial SSA determination level, State Agency reviewing physician Jeffrey Merrill, M.D., opined that Plaintiff was capable of light work, with the additional limitations of occasional pushing, pulling, or pedaling with the bilateral lower extremities; no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, or crawling; and avoiding concentrated exposure to vibration and workplace hazards.[106]  State agency reviewing physician Jay Caldwell, M.D., opined that Plaintiff could perform light work, with the additional limitations of occasional pushing, pulling, or pedaling with the bilateral lower extremities; frequent climbing of ramps or stairs; occasional climbing of ladders,

---

[104] Docket 15 at 8.  *See* 20 C.F.R., Part 404, Subpt. P, App'x 2, § 201.12.  Plaintiff was 50 years of age at the time of his application in October 2019. A.R. 26.

[105] Docket 19 at 2.

[106] A.R. 75–80.

ropes, or scaffolds, balancing, stooping, kneeling, crouching, or crawling; avoiding concentrated exposure to extremes of heat or cold, wetness, humidity, noise, and pulmonary irritants; and avoiding even moderate exposure to vibration and workplace hazards.[107]

The ALJ found the State Agency reviewing physicians' opinions partially persuasive. The ALJ noted that the State Agency opinions were "supported by explanation and citations to evidence, and generally consistent with the relevant medical evidence of record." The ALJ also noted that the State Agency consultants had specialized Social Security disability program knowledge and experience. The ALJ then concluded that the medical evidence of record supported additional severe impairments and a more restrictive residual functional capacity than the reviewing physicians had opined.[108]

Plaintiff asserts that the ALJ erred by failing to "proceed to the second step of the analysis required by § 404.1520c . . . and consider the 'most persuasive factors' of PA Sensmeier's treatment history." He alleges that because the ALJ addressed more than just supportability and consistency in evaluating the State Agency medical opinions, it was error not to give PA Sensmeier's opinion the same consideration. Moreover, Plaintiff alleges that the ALJ erred by failing to specify

_____

[107] A.R. 110–14.

[108] A.R. 25.

how much weight he gave the State Agency reviewing physicians' knowledge and experience.[109]  The Commissioner counters that the ALJ was not required to address any additional factors in his evaluation of PA Sensmeier's opinions, apart from supportability and consistency, because the ALJ did not find PA Sensmeier's opinions and the State Agency opinions equally well supported and consistent with the record.[110]  And the Commissioner notes that the ALJ "may," but is not required to explain how he considered the remaining factors, such as program knowledge, in his written decision.[111]

The regulation directs the ALJ to consider all of the factors when evaluating medical opinions, not just consistency and supportability.  But the ALJ need only make specific written findings regarding the consistency and supportability factors, unless two or more medical opinions or prior administrative medical findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same."  In that situation, the ALJ must articulate in the decision how "the other most persuasive factors" were considered. [112]

---

[109] Docket 15 at 9, 13–14.

[110] Docket 19 at 9–10.

[111] Docket 19 at 9. *See* 20 C.F.R. § 404.1520c(b)(2) ("We may, but are not required to, explain how we considered the factors [other than supportability and consistency] as appropriate . . .").

[112] 20 C.F.R. §§ 404.1520c(b)(3).

In this case, the ALJ adequately addressed the supportability and consistency of PA Sensmeier's opinions in his decision and the ALJ's findings were supported by substantial evidence. Consequently, the ALJ was not required to articulate his consideration of the other persuasive factors in his evaluation of PA Sensmeier's opinions. At the same time, the ALJ was not prohibited from articulating his consideration of additional factors in his discussion of the State Agency medical opinions.[113] Therefore, the ALJ did not error by articulating the persuasiveness of the State Agency physicians' knowledge and experience with the Social Security disability program while addressing only the supportability and consistency of PA Sensmeier's opinions.

In sum, the ALJ's finding that PA Sensmeier's opinions were inconsistent with and unsupported by the record is supported by substantial evidence. The final decision of the Commissioner is affirmed.

## V. CONCLUSION

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are free from legal error and are supported by substantial

---

[113] *Woods v. Kijakazi* 32 4th 785, 792 (9th Cir. 2022), citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We *may, but are not required to*, explain how we considered the [relationship] factors. . .when we articulate how we consider medical opinions. . .in your case record.") (emphasis added).

evidence.  Pursuant to 42 U.S.C. § 405(g), IT IS ORDERED that Plaintiff's request for relief at Docket 15 is DENIED and the Commissioner's final decision is AFFIRMED.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 7th day of July, 2023 at Anchorage, Alaska.


*/s/  Sharon  L.  Gleason*
UNITED STATES DISTRICT JUDGE